246 F.2d 357
 UNITED STATES of America, Appellant,
v.
LATROBE CONSTRUCTION COMPANY, Bragg's Electric Construction
Company, Arkansas Foundry Company, General Steel Products
Company, Jeffery Lumber Company, Padgett Lumber Company,
Choctaw, Inc., Ira Sherrill, Mill and Mine Supply Company,
and Crow-Burlingame Company, Appellees.
 No. 15547.
 United States Court of Appeals Eighth Circuit.
 June 26, 1957.
Rehearing Denied Aug. 7, 1957.
 
 Harold S. Harrison, Atty., Dept. of Justice, Washington, D.C. (Perry W. Morton, Asst. Atty. Gen., Osro Cobb, U.S. Atty., Little Rock, Ark., and Roger P. Marquis and John C. Harrington, Attys., Dept. of Justice, Washington, D.C., on the brief), for appellant.
 W. D. Murphy, Jr., Batesville, Ark., E. DeMatt Henderson and A. L. Barber, Little Rock, Ark. (J. J. McCaleb, Batesville, Ark., on the brief), for appellees.
 Before WOODROUGH, VOGEL and VAN OOSTERHOUT, Circuit Judges.
 VAN OOSTERHOUT, Circuit Judge.
 
 
 1
 In a mortgage foreclosure action brought by the United States against Westmoreland Manganese Corporation, hereinafter called Westmoreland, judgment was entered against Westmoreland in favor of the United States for $3,508,943.26, and sale of the mortgaged property was ordered. We have affirmed this judgment as to Westmoreland in an opinion filed this date. Westmoreland Manganese Corporation v. United States, 8 Cir., 246 F.2d 351.
 
 
 2
 The trial court in a well prepared opinion, reported at 134 F.Supp. 898, 917, sets out in detail the facts pertinent to this appeal and his solution of the legal problems. We shall not encumber this opinion by setting out the complicated facts so well stated by the trial court.
 
 
 3
 The Government appeals from the court's determination that appellees,[1] who claimed miners' liens[2] under Arkansas law for improvements erected upon the mortgaged premises subsequent to the date of the Government's mortgages, had liens prior to the lien of the Government mortgages as to such improvements erected upon the mortgaged property which had become appurtenant to the land. The Government also appeals from the court's determination that individual miners' lien claimants who had furnished identifiable particular items of personal property which had been delivered to Westmoreland but had not been incorporated into the improvements so as to become appurtenant to the land were entitled to priority with respect to such property as against the Government's mortgage lien. The appellees were made parties below and had filed crossclaims.
 
 
 4
 Jurisdiction is established under 28 U.S.C., § 1345, and jurisdiction is also asserted under 50 U.S.C.Appendix, § 2156(b).
 
 
 5
 The court directed the manner of sale of Westmoreland's property. The total sale brought $1,348,551.19, which includes proceeds of $319,489.79 for the property upon which appellees were held to have a prior lien. The property upon which appellees were given a prior lien was separately sold, with the right and obligation on the part of the purchaser to remove such property.
 
 
 6
 The court held against the appellees upon many of the contentions raised by their pleadings, including appellees' claims that the Government's mortgages were void for indefiniteness, that the Government was a joint venturer with Westmoreland, that creditors were third party beneficiaries of the Government-Westmoreland contract, and that equitable considerations barred the Government's priority claim.
 
 
 7
 The mortgages involved in this case were given as security for Government funds advanced Westmoreland pursuant to the provisions of the Defense Production Act of 1950, 50 U.S.C.Appendix, § 2061 et seq. This act contains a broad declaration of policy and gives the President or his delegate broad powers to maintain the military and economic strength of the nation. Section 2092 authorizes loans to private business to expedite production of materials for national defense, including the mining and development of strategic and critical metals and minerals. 'Such loans may be made without regard to the limitations of existing law and on such terms and conditions as the President deems necessary * * *.' The Treasury is required to furnish the funds necessary to make the authorized loans. It was pursuant to this authority that the loan of the funds of the United States was made to Westmoreland.
 
 
 8
 Westmoreland is a Maryland corporation authorized to do business in Arkansas. The United States, acting through the Defense Materials Procurement Agency, an authorized representative of the President, entered into a contract with Westmoreland on April 7, 1952. Under such contract the Government agreed to purchase manganese ore, upon specified terms, which was to be mined from the ore deposits owned by Westmoreland and processed in a washing and concentrating plant to be constructed within a year on the Westmoreland property. To assist Westmoreland in this undertaking the Government agreed to advance $3,807,250 for land acquisition, construction, and working capital. The contract provides in part:
 
 
 9
 '(c) You shall furnish the Government with unemcumbered and unqualified mortgages covering the new facilities and all mining property presently owned by you which will be fully paid for through the advance of funds by the Government as prescribed herein. Such mortgages are to be in the form and of the substance prescribed or approved by the Government.
 
 
 10
 '(d) The Government shall have a lien paramount to all other liens upon the credit balance in the special account or accounts in which the advance payments may be deposited, upon materials produced by you from the facilities, and upon all other assets.'
 
 
 11
 The Real Estate and Chattel Mortgage executed and delivered to the United States on May 22, 1952, states among other things:
 
 
 12
 'This mortgage shall constitute a first lien on the mortgaged property.
 
 
 13
 'That this mortgage and the lien thereof shall extend to any additional premises, property and rights hereafter acquired; and that all such premises, property and rights shall forthwith upon acquisition thereof, and without further act, become subject to this mortgage and the lien thereof.'
 
 
 14
 A supplemental mortgage, also dated May 22, 1952, contains the following provision:
 
 
 15
 'It being understood that the cost of constructing the proposed manganese washing and concentrating plant (to be erected as provided in Paragraph (B) of Subdivision I aforesaid) is to be paid out of the proceeds of the advances to be made by Mortgagee to Mortgagor as hereinabove set out, it is understood (and notice is hereby given) that the lien of the Mortgagee under said Real Estate and Chattel Mortgage and under this Supplemental Mortgage upon said manganese washing and concentrating plant (and the site thereof) will take priority over the lien of any mechanic, materialman or laborer or any other statutory lien.'
 
 
 16
 These mortgages were properly executed and recorded before construction was commenced by Westmoreland on its new facilities and before any lien now asserted by the appellees attached.
 
 
 17
 The Government in its brief urges that the court erred in determining the priority of lien issue upon the basis of Arkansas law; that the federal law applies; and that the Government's rights under its contract lawfully entered into can not be affected or limited by provisions of state law. The Government additionally asserts that under Revised Statutes, section 3466, 31 U.S.C.A. § 191, it is entitled to priority in payment. The appellees contend that the Government did not raise these issues in the trial court and can not adopt a new theory upon appeal.
 
 
 18
 The Government in its petition sets out in full the contract and mortgages relied upon, and states that they were entered into by the United States pursuant to the provisions of the Defense Production Act of 1950. Priority of the Government mortgages over the appellees' liens is asserted. The Government prays that a first, prior, and paramount lien be established in its favor against the mortgaged property. Appellees, in their answers and crossclaims, deny that their liens are subsequent to the Government's mortgages lien, and assert that their liens are prior to the mortgage lien under the Arkansas Miners' Lien statutes. The Government in its reply denies that appellees have any miners' lien which is superior to the lien created by the Government's prior mortgages.
 
 
 19
 The trial court recognized that it was necessary to decide what law applies. He determined that Arkansas law controls. It is perhaps entirely true, as contended by appellees, that the argument below was devoted largely to the issue of whether the miners' liens were prior to the mortgage lien under Arkansas law. Doubtless, the trial court did not have the benefit of the briefs furnished this court on the contention that federal law applies. However, the Government, in its reply brief filed here, does set out a brief filed in the trial court on July 22, 1954, in opposition to a motion to dismiss its petition filed by Westmoreland, wherein the Government states in part:
 
 
 20
 'Before mentioning the merits of defendants' motion, it should be pointed out that in construing contracts executed by the United States of America, particularly those with reference to land, the applicable law is Federal, rather than State. United States v. Allegheny County, 322 U.S. 174, 182, 64 S.Ct. 908, 88 L.Ed. 1209; Girard Trust Co. v. United States, 3 Cir., 1947, 149 F.2d 872, 161 F.2d 159; Brooklyn Waterfront Terminal Corporation v. United States, 1950, 90 F.Supp. 943, 948, 117 Ct.Cl. 62. * * *'
 
 
 21
 Appellees contend that this brief was filed with reference to a controversy between the Government and Westmoreland. The factual statement is doubtless correct. Novertheless the contract and mortgages involved in Westmoreland are the identical instruments that the involved in the present controversy.
 
 
 22
 At least to the extent of the issues raised by the pleadings the court is bound to apply the appropriate law. United States v. Certain Parcels of Land in City of Philadelphia, 3 Cir., 144 F.2d 626, 630, 155 A.L.R. 253; Ettman v. Federal Life Ins. Co., 8 Cir., 137 F.2d 121, 127. In the case last cited the trial court relied upon a Missouri statute which this court found to be inapplicable. This court determined the situation was governed by the common law of Missouri. The court states (137 F.2d at page 127):
 
 
 23
 '* * * These rules contemplate that every litigant shall have a trial of his case upon its merits and in accordance with the evidence and the applicable law. Whether the Company assumed in its pleadings and upon the trial that it must prove an intent on the part of the insured to deceive is of no consequence. The evidence received was within the issues made by the pleadings, and it was the duty of the trial court to apply the proper rules of law to the fact situation. * * *'
 
 
 24
 In United States v. Certain Parcels of Land in City of Philadelphia, supra, the trial court applied the law of Pennsylvania in a Government condemnation case. Upon appeal appellee urged that the case below was tried upon the theory that Pennsylvania law applied, and that appellant could not rely upon a different theory as to controlling law upon appeal. This argument was rejected by the court of appeals. The court states (144 F.2d at page 630):
 
 
 25
 '* * * Appellate courts of course have always remanded cases when the trial courts have applied the law of the wrong jurisdiction. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. We think this should be done in this case and it is immaterial that it was tried in the district court on the theory that Pennsylvania law was to be applied. The appropriate law must be applied in each case and upon a failure to do so appellate courts should remand the cause to the trial court to afford it opportunity to apply the appropriate law even if the question was not raised in the court below. * * *'We are satisfied that under the pleadings in the present case the court was bound to apply the right law, and that the issue of whether federal common law or Arkansas law should be applied was before the trial court.
 
 
 26
 An additional problem is raised by the Government's contention that it is entitled to priority under R.S., section 3466. The Government does not plead all of the facts necessary to bring it under the provisions of this statute. The Government apparently relies upon the appointment of the receiver as the act of bankruptcy on the part of Westmoreland which brings the statute into operation. This was not and could not have been pleaded in the original petition as the receiver was subsequently appointed pursuant to the prayer of the Government's petition. The petition was not amended to assert an act of bankruptcy. The Government in its pleadings did not specifically request priority by reason of R.S., section 3466. An appellate court may, in its discretion, in the public interest or in order to prevent a miscarriage of justice, consider an issue not raised in the trial court. Helvering v. Hormel, 8 Cir., 111 F.2d 1, affirmed 312 U.S. 552, 557, 61 S.Ct. 719, 85 L.Ed. 1037; United States v. Harrell, 8 Cir., 133 F.2d 504, 507; Frieze v. West American Ins. Co., 8 Cir., 188 F.2d 331, rehearing denied 190 F.2d 381; Federal Deposit Insurance Corporation v. Vest, 6 Cir., 122 F.2d 765, 768. The power to consider issues not raised in the trial court should be sparingly exercised. Whether we should exercise such power here in connection with the Government's assertion of priority under 3466 presents a close question. We find it unnecessary to determine this issue because of the result reached in the determination of other issues before us for consideration.
 
 
 27
 We believe that the priority of the liens involved in this appeal should be determined by federal law. Article I, section 8 of the Constitution of the United States, gives Congress power to provide for the common defense and general welfare of the United States, and to make all laws necessary and proper to carry into execution powers vested by the Constitution in the Government of the United States or any department thereof. Article VI provides that the Constitution and laws of the United States made in pursuance thereof shall be the supreme law of the land. See United States v. Allegheny County,322 U.S. 174, 182, 64 S.Ct. 908, 88 L.Ed. 1209. Clearly, Congress was acting within its constitutional power in enacting the Defense Production Act of 1950. This act authorizes the President or his representative to make loans to private businesses to expedite the procurement of strategic materials for national defense. Congress authorized such loans to be made upon such terms as the President deemed necessary. As heretofore set out, the contract and mortgages specified that the Government should have a paramount lien on Westmoreland's assets.
 
 
 28
 In the Allegheny case, supra, the Supreme Court of Pennsylvania had held that Pennsylvania could levy ad valorem taxes on personal property title to which was in the Government and which property had become attached to the taxpayer's realty under a Government contract. The Supreme Court reversed, stating in part (322 U.S. at page 183, 64 S.Ct. at page 913):
 
 
 29
 'Procurement policies so settled under federal authority may not be defeated or limited by state law. The purpose of the supremacy clause was to avoid the introduction of disparities, confusions and conflicts which would follow if the Government's general authority were subject to local controls. The validity and construction of contracts through which the United States is exercising its constitutional functions, their consequences on the rights and obligations of the parties, the titles or liens which they create or permit, all present questions of federal law not controlled by the law of any state. * * *'
 
 
 30
 In Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838, the United States sued the bank to recover proceeds of a check it had paid the bank. It was established that the endorsement of the payee, a W.P.A. worker, had been forged. The United States District Court applied the law of Pennsylvania and held for the bank. The court of appeals, reversed, 130 F.2d 93, holding that federal rather than state law should be applied. The Supreme Court affirmed, stating (318 U.S. at pages 366-367, 63 S.Ct. at pages 574-575):
 
 
 31
 'We agree with the Circuit Court of Appeals that the rule of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, does not apply to this action. The rights and duties of the United States on commercial paper which it issues are governed by federal rather than local law. When the United States disburses its funds or pays its debts, it is exercising a constitutional function or power. * * * The duties imposed upon the United States and the rights acquired by it as a result of the issuance find their roots in the same federal sources. Cf. Deitrick v. Greaney, 309 U.S. 190, 60 S.Ct. 480, 84 L.Ed. 694; D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp., 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956. In absence of an applicable Act of Congress it is for the federal courts to fashion the governing rule of law according to their own standards.'
 
 
 32
 In United States v. Standard Oil Company of California, 332 U.S. 301, 67 S.Ct. 1604, 1608, 91 L.Ed. 2067, the Government sued a truck driver for damages caused the Government by reason of injuries inflicted upon a soldier as the result of the truck driver's negligence. The question of whether under such circumstances federal or state law controlled is thoroughly discussed. It is stated that the great object of Erie v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, was 'to secure in the federal courts, in diversity cases, the application of the same substantive law as would control if the suit were brought in the courts of the state where the federal court sits.' The Court continues (332 U.S. at pages 307-308, 67 S.Ct. at page 1608, 91 L.Ed. 2067):
 
 
 33
 'Conversely there was no purpose or effect for broadening state power over matters essentially of federal character of for determining whether issues are of that nature. The diversity jurisdiction had not created special problems of that sort. Accordingly the Erie decision, which related only to the law to be applied in exercise of that jurisdiction, had no effect, and was intended to have none, to bring within the governance of state law matters exclusively federal, because made so by constitutional or valid congressional command, or others so vitally affecting interests, powers and relations of the Federal Government as to require uniform national disposition rather than diversified state rulings. Cf. Clearfield Trust Co. v. United States, 318 U.S. at pages 366-368, 63 S.Ct. (573), at pages 574-576, 87 L.Ed. 838. Hence, although federal judicial power to deal with common-law problems was cut down in the realm of liability or its absence governable by state law, that power remained unimpaired for dealing independently, wherever necessary or appropriate, with essentially federal matters, even though Congress has not acted affirmatively about the specific question.
 
 
 34
 'In this sense therefore there remains what may be termed, for want of a better label, an area of 'federal common law' or perhaps more accurately 'law of independent federal judicial decision,' outside the constitutional realm, untouched by the Erie decision. * * *'
 
 
 35
 In our present case the Government, under the statute authorizing the loan, had authority to prescribe the conditions of the loan. Pursuant to such authority the Government contracted for and obtained a prior and paramount lien upon Westmoreland's property, including such improvements as might be subsequently erected. As heretofore pointed out, the mortgages provide that the Government's lien is to be prior to the lien of any mechanics, materialmen, or labor or any other statutory lien. The Government's mortgages were executed and recorded before any labor or material was furnished by any of the appellees. Consequently, at the time appellees entered into contracts with Westmoreland for labor and materials, they had constructive notice of the terms of the Government's mortgages. This fact may not be of any particular significance in the determination of this case, but it is an answer to the equitable claims of the appellees. The validity of the Government's mortgages in all respects has been confirmed by the judgment that has been entered. The Government, by virtue of a valid contract, authorized by the Constitution and statutes of the United States, bargained for and obtained a paramount lien upon Westmoreland's property. We can see no reason why the Government should not be in as good a position under a valid contractual lien as it would be under a lien created by statute.
 
 
 36
 The federal courts have had occasion, in connection with cases arising under the priority granted by 3466, to discuss what type of lien will defeat the priority granted the Government by such section. To avoid confusion we state that we are not basing our decision in the present case in any way upon the provisions of 3466, but are citing cases decided under such statute merely for the purpose of illustrating the status given to state liens by federal courts. In United States v. Waddill, Holland & Flinn, Inc., 323 U.S. 353, 65 S.Ct. 304, 89 L.Ed. 294, the issue was whether, in a state court proceeding under a general assignment for the benefit of creditors, section 3466 gives priority to the claim of the United States over a landlord's lien and a municipal tax lien. The Supreme Court states that it is not expressly decided whether the Government's 3466 priority could be defeated by a specific and perfected lien upon the property at the time of insolvency or voluntary assignment, and again finds it does not reach that problem since it is satisfied the asserted liens are not specific and perfected. The Virginia court had held in effect that the liens were specific and perfected. In reversing the Supreme Court states (323 U.S. at pages 356-357, 65 S.Ct. at page 306, 89 L.Ed. 294):
 
 
 37
 '* * * But it is a matter of federal law as to whether a lien created by state statute is sufficiently specific and perfected to raise questions as to the applicability of the priority given the claims of the United States by an act of Congress. If the priority of the United States is ever to be displaced by a local statutory lien, federal courts must be free to examine the lien's actual legal effect upon the parties. A state court's characterization of a lien as specific and perfected, however conclusive as a matter of state law, cannot operate by itself to impair or supercede a long-standing Congressional declaration of priority. * * *'
 
 
 38
 The Court then holds that under federal law the liens are not specific and perfected but are merely caveats of a more perfect lien to come. See also County of Spokane, Washington v. United States, 279 U.S. 80, 49 S.Ct. 321, 73 L.Ed. 621; People of State of Illinois ex rel. Gordon v. Campbell, 329 U.S. 362, 67 S.Ct. 340, 91 L.Ed. 348; United States v. Gilbert Associates, Inc., 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071. Professor Frank R. Kennedy, in an article in 63 Yale Law Journal 905, after discussing numerous cases arising under section 3466, states (pp. 918-919):
 
 
 39
 'The remarkable progeny of Spokane County subordinated statutory liens to the federal claim, even though the Government had no lien. The condemned category of the inchoate and general lien, created by the Court and continually enlarged to include each new lien coming before it, has come to embrace practically every lien to be found in modern American law. And in order to avoid facing the supposedly unresolved question whether a specific and perfected lien is superior to the federal priority, the Court has always been successful in finding one feature suggestive of inchoateness. * * *'
 
 
 40
 Section 3670 of the Internal Revenue Code of 1939, 26 U.S.C. § 3670, provides for a lien in favor of the United States for taxes. This statute does not in terms confer priority upon tax liens. United States v. City of New Britain, 347 U.S. 81, 84, 74 S.Ct. 367, 98 L.Ed. 520. In United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264, the issue was the relative priority between an attachment lien and a 3670 tax lien. The district court and the court of appeals found the attachment lien to be prior. The Supreme Court reversed on the question of the applicable law. The Supreme Court says (348 U.S. at page 213, 75 S.Ct. at page 241):
 
 
 41
 'The relative priority of the lien of the United States for unpaid taxes is, as we said in United States v. Waddill, Holland & Flinn, Inc., 323 U.S. 353, 356, 357, 65 S.Ct. 304, 306, 89 L.Ed. 294; People of State of Illinois ex rel. Gordon v. Campbell, 329 U.S. 362, 371, 67 S.Ct. 340, 345, 91 L.Ed. 348; United States v. Security Trust & Savings Bank, 340 U.S. 47, 49, 71 S.Ct. 111, 112, 95 L.Ed. 53, always a federal question to be determined finally by the federal courts. The state's characterization of its liens, while good for all state purposes, does not necessarily bind this Court. * * *'
 
 
 42
 See also United States v. Security Trust Co., 340 U.S. 47, 49, 71 S.Ct. 111, 95 L.Ed. 53.
 
 
 43
 United States v. White Bear Brewing Co., 7 Cir., 227 F.2d 359, involved a determination of the question of priority between a mechanic's lien and a tax lien. In that case the work had been completed, the mechanic's lien had been filed in the manner required by state law, and proceedings for the foreclosure of the lien were commenced before the assessment list was received by the collector and before the assessment was made and notice thereof filed. The court of appeals, in a carefully considered opinion, held the mechanic's lien claimant entitled to priority over the tax lien. The Supreme Court reversed without opinion. 350 U.S. 1010, 76 S.Ct. 646, 100 L.Ed. 871. The effect of the reversal was to determine the tax lien to have priority over the mechanic's lien. See dissenting opinion, United States v. White Bear Brewing Co., 350 U.S. 1010, 76 S.Ct. 646, 100 L.Ed. 871. To the same effect see United States v. Colotta, 350 U.S. 808, 76 S.Ct. 82, 100 L.Ed. 725.
 
 
 44
 The decisions of the Supreme Court heretofore discussed appear to establish quite definitely that a federal priority or federal lien will prevail over any lien that is not specific and perfected. The Supreme Court has uniformly held that, as against federal priorities or liens, the question of whether the lien asserted against the Government claim is specific and perfected is always a federal question. In White Bear Brewing Co., supra, much more was done in the way of perfecting the labor and materialman's lien than was done in the present case. There the work had been completed, the lien had been filed, and the foreclosure had commenced before the Government tax lien was asserted. In our present case no materials had been delivered or work performed until after the Government's mortgages had been executed, delivered, and recorded.
 
 
 45
 The Government also urges that the court erred in determining that under Arkansas law the miners' liens are superior to a prior mortgage lien, and also in determining that the miners' lien statute is applicable under the facts in this case. The court's opinion discloses that he has made a careful and exhaustive study of the applicable Arkansas cases, and it is very probable that he reached a permissible conclusion on the basis of Arkansas law. The court frankly states that his decision is based upon Arkansas law. He also states (134 F.Supp. at page 942):
 
 
 46
 '* * * The priority of a mechanic's lien under Arkansas law, however, does not depend upon the quality of the lien as 'choate' or 'inchoate,' but rather upon the time at which the lien attaches, which is when the first materials are furnished. * * *'
 
 
 47
 The trial court erred in determining the priority issue before it on the basis of Arkansas law rather than upon the basis of federal common law as developed by the Supreme Court of the United States in the cases we have heretofore discussed.
 
 
 48
 The question remains as to whether this case should be remanded to the trial court for the purpose of taking additional evidence and for additional fact determinations. In Frieze v. West American Ins. Co., supra, the test to be applied in the event new issues are considered by the appellate court is stated as follows (190 F.2d at page 382):
 
 
 49
 '* * * Where such new issues are considered by the appellate court, the case will be remanded for decision by the trial court, of any uncertain or disputed facts related to such issues. Where the new issues involve undisputed facts, the appellate court may reverse and remand with directions to the trial court to proceed in accord with the decision of the appellate court.'
 
 
 50
 As heretofore stated, we doubt whether the question of what law is applicable is a new issue. In any event, the application of the foregoing test to the record in this case satisfies us that the evidence relative to the priority of the respective liens was fully developed in the trial court, and that there is no occasion to remand this case to the trial court for further testimony or fact findings.
 
 
 51
 We are satisfied that under federal law the appellees' miners' liens were inchoate and were not specific and perfected at the time the lien of the Government mortgages attached to the Westmoreland property. It is therefore our conclusion that the Government's mortgage lien is prior to the liens of the appellees.
 
 
 52
 The judgment appealed from is reversed, and this case is remanded to the trial court for further proceedings not inconsistent with the views expressed in this opinion.
 
 
 
 [1]
 The creditor defendants other than appellees either held judgments against Westmoreland or were unsecured creditors. Their claims were held to rank below the claims of both the Government and the appellees in all respects. Since the creditors other than the appellees have not prosecuted an appeal, their claims require no discussion or consideration
 
 
 [2]
 The miners' liens are claimed under Arkansas Statutes, § 51-701 et seq. The applicable statutes are quoted in full in the trial court's opinion, 134 F.Supp. 898, 930-931