SOUTHWEST ENGINE COMPANY, a corporation, Appellant,

v.

UNITED STATES of America, Appellee.

No. 6237.

United States Court of Appeals Tenth Circuit.

Jan. 23, 1960.

---

John B. Tittmann, Albuquerque, N. M., for appellant.

James A. Borland, U. S. Atty., Albuquerque, N. M., for appellee.

Before MURRAH, Chief Judge, LEWIS, Circuit Judge, and WALLACE, District Judge.

WALLACE, District Judge.

The appellant urges that inasmuch as its mechanic's lien, as a matter of law, had priority over appellee's chattel mortgage, the district court erred in sustaining appellee's motion for summary judgment.

The facts are undisputed. In December of 1956, the Manganese Corporation of Arizona procured a loan from the Small Business Administration;[1] the note given to SBA was secured by a chattel mortgage, embracing specified personalty owned and used by Manganese in its mining operation, which mortgage was recorded in Socorro County, New Mexico, on December 7, 1956. In October of 1958, at the request of Manganese, appellant reconditioned an engine which was included in the SBA chattel mortgage.[2] When the repair bill of $1,746.61 was not paid, appellant retained possession of the engine until the appellee filed its writ of replevin.[3]

Specifically, the appellant asserts that a lien in its favor was perfected under the appropriate New Mexico lien statutes,[4] and that the lien so created was superior to that of appellee's, even though appellee's mortgage was prior in time, for the reason that SBA's chattel mortgage impliedly authorized the mortgagor to maintain the property in good repair and under the New Mexico law where a mortgagee authorizes the reparation, the mortgage becomes inferior to a properly perfected mechanics' lien.[5]

At two points, appellant's argument falls short of the critical plateau.

First, it is settled that where a divergence of law exists touching contractual rights in which the United States, exercising its constitutional functions, is involved, federal, rather than local, law governs. United States v. Allegheny County, 1944, 322 U.S. 174, 183, 64 S.Ct. 908, 88 L.Ed. 1209. And, the federal decisions uniformly sanction the lien enforcement principle of "first in time, first in right." United States v. City of New Britain, 1954, 347 U.S. 81, 74 S.Ct. 367, 371, 98 L.Ed. 520; United States v. Ringwood Iron Mines, 3 Cir., 251 F.2d 145, certiorari denied 1958, 356

---

1. The loan was for $250,000 and was evidenced by a note to SBA dated November 26, 1956.

2. This engine is described as: "General Motors Diesel Engine, Model 6082, Unit No. 6A–47124 to a Lima Shovel."

3. On April 1, 1959, pursuant to such writ, the United States Marshal took this engine from the appellant's possession and delivered it to the appellee.

4. Section 61–3–1, N.M.S.A. (1953) provides: *Liens for manufacture or repairs—Motor vehicles.*—All artisans and mechanics shall have a lien on things made or repaired by them for the amount due for their work, and may retain possession thereof until said amount is paid. * * * "

5. See Maulhardt v. J. D. Coggins Co., 1955, 60 N.M. 175, 288 P.2d 1073. Also, see Section 61–3–7, N.M.S.A. (1953).

U.S. 974, 78 S.Ct. 1138, 2 L.Ed.2d 1148; United States v. Latrobe Construction, 8 Cir., 246 F.2d 357, certiorari denied 1957, 355 U.S. 890, 78 S.Ct. 262, 2 L. Ed.2d 189.

■■ In addition, the result in the instant case would be unaltered even if New Mexico law were controlling. It has long been the New Mexico rule that lien rights created by a prior mortgage become subordinated to those of a mechanic only where the mortgagee authorizes, expressly or impliedly, the chattel repair. Universal Credit Co. v. Printy, 1941, 45 N.M. 549, 119 P.2d 108. The Maulhardt case, footnote 5, supra, upon which appellant relies, recognized this principle [6] but held that the mortgagee therein impliedly authorized the controverted repair work inasmuch as the executed mortgage obligated the mortgagor "to keep the said mortgaged property in as good condition and repair as it now is, ordinary wear and tear excepted." [7] No such requirement, from which the inference of mortgagee authorization can be drawn, exists in the instant case. Contrarily, the chattel mortgage in question provided that the mortgagors were neither to encumber nor to remove the chattel in question without first obtaining written consent from the SBA; [8] and, the mortgage contained no language which imposed upon the mortgagor a duty to keep the engine in good repair.[9]

Accordingly, the judgment is affirmed.

6. " * * * It is definitely settled in this jurisdiction that a mortgagor may not, without the authority of the mortgagee, expressed or implied, create a lien on mortgaged property as to give it precedent over prior incumbrances. * * " 288 P.2d 1073, 1075.

7. Id. at 1075.

8. No agent or employee of SBA gave his consent, either written or oral, to the removal, repairing or encumbering of this engine. In fact, the repair work was done without the knowledge of any SBA representative.

9. Cf. the language in the Universal Credit case, supra, wherein at pages 110 and 111 of 119 P.2d the court, in refuting the proposition that the mortgagee had impliedly approved the making of repairs, stated: "The trouble with this argument is that there is nothing in the contract to sustain it. It is not claimed the plaintiff ever gave the purchaser oral or written authority outside the contract to order repairs. It is simply asserted that such authority arises by implication from the contract. This argument is made in the face of an express covenant in the contract on the part of the purchaser (the mortgagor) 'to keep said property free of all taxes, liens and incumbrances' ".