The T. H. ROGERS LUMBER COMPANY, Plaintiff-Appellee,

v.

James Bruce APEL et al., Defendants,

and

United States of America, Defendant-Appellant.

No. 72-1177.

United States Court of Appeals, Tenth Circuit.

Oct. 16, 1972.

Tom Shaw, Madill, Okl., of Pierce, Couch, Hendrickson, Gust & Short, Oklahoma City, Okl., for plaintiff-appellee, The T. H. Rogers Lumber Co.

Don Welch, Jr., Oklahoma City, Okl., for defendant-appellee, Parrish Electric and Plumbing.

Ronald R. Glancz, Atty., Dept. of Justice (Harlington Wood, Jr., Asst. Atty. Gen., Richard A. Pyle, U. S. Atty., and Walter H. Fleischer, Atty., Dept. of Justice, on the brief), for defendant-appellant, the United States.

Before JONES,* Senior Circuit Judge, and SETH and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The proceeding before us was commenced in the District Court of Marshall County, Oklahoma. Suit was there filed by The T. H. Rogers Lumber Company. Named as defendants were the Apels, together with the United States of America, ex rel. Farmers Home Administration and Parrish Electric and Plumbing. The relief sought by Rogers was judgment on a certain debt allegedly owed by the Apels, together with a declaratory judgment that its materialmen's lien was entitled to priority over the government's mortgage and all other liens, whereby it was entitled to a foreclosure. The United States removed the case to the United States District Court for the Eastern District of Oklahoma and filed an answer in which it claimed priority over the mechanics' and materialmen's lien by virtue of its mortgage which it maintained was prior in time to the mechanics' liens.

---

\* Warren L. Jones, Senior Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation.

The District Court granted the motion of Rogers and Parrish Electric and Plumbing for summary judgment, at the same time denying the government's similar motion, holding that even though the mechanics' and materialmen's liens were filed many months subsequent to the filing of the mortgage lien, that the movants were entitled to prevail because under Oklahoma law once their liens were perfected they related back to the date on which the labor or material was first furnished. In arriving at this conclusion, the court relied on Ault v. Harris, 317 F.Supp. 373 (D.Alaska 1968), aff'd per curiam, 432 F.2d 441 (9th Cir. 1970). The final ruling was that on the sale of property pursuant to foreclosure, the proceeds of the sale after payment of administrative expenses were to be applied, first, to satisfaction of the claims of the mechanics' lienors including attorneys fees and thereafter to the claims of the United States.

The question presented on this appeal is, therefore, whether the court erred in holding that the prior recorded mortgage lien was inferior and subordinate to the subsequently filed mechanics' and materialmen's liens, together with the attorneys fees.

On September 19, 1969, the Apels borrowed $14,500.00 from the Farmers Home Administration, pursuant to its rural housing program. This was a home construction loan and it gave as security a promissory note, together with a mortgage on the Apels' Oklahoma property. This mortgage was recorded on September 19, 1969, in the office of the County Clerk of Marshall County, Oklahoma. It conveyed to the government real property on which the house was to be built, together with all rights, interests, easements, hereditaments and appurtenances thereunto belonging, all improvements in personal property now or later attached thereto or reasonably necessary to the use thereof. There was a prohibition of the property or any portion thereof being assigned, sold, transferred, encumbered, voluntarily or otherwise, without the written consent of the government.

The interest of Parrish Electric and Plumbing is asserted to have arisen by delivery of pipe on July 19, 1969 (prior to the recording of the government mortgage). After the recording of the government mortgage, additional labor and material were furnished by Parrish in connection with construction of the house, and this continued through March 13, 1970, and amounted to a total of $1,812.07.

The T. H. Rogers Lumber Company's claim allegedly dated from September 15, 1969, at which time it delivered $445.72 worth of building materials used in the construction of the house. After the recording of the Farmers Home Administration mortgage, Rogers furnished additional materials through January 10, 1970, having a total value of $7,010.67, of which a balance in the amount of $2,324.89 remained due and owing. The Rogers' lien was filed on April 2, 1970. The Parrish lien was filed April 1, 1970, and amended on February 5, 1971.

The material furnished by both Rogers and Parrish was sold to the Apels and bills of sale evidenced these sales.

In *Ault*, the Court of Appeals for the Ninth Circuit did not issue an opinion. Rather, by *per curiam* order, the opinion of the District Court was adopted. The reasons advanced by the District Court were, first, that the Small Business Administration was operating as a mere moneylending agency and that it was not entitled to the "first in time, first in right" priority. The court analogized that such priority was no longer available to the United States in the field of tax liens and thus there was no good reason for adopting a more stringent rule than that which Congress deemed necessary in the field of taxation. See 317 F.Supp. at 375. At the same time, the court recognized that federal rather than state law must be applied. It satisfied this requirement by simply holding that the proper federal common law rule was the rule which was recognized in

the State of Alaska. See 317 F.Supp. at 376.

■ Unquestionably, federal law must be applied. This requirement was laid down in Clearfield Trust Co. v. United States, 318 U.S. 363, 367, 63 S. Ct. 573, 575, 87 L.Ed. 838 (1943). This was an action by the government for recovery of monies paid out by Clearfield Trust on a government check which had a forged endorsement. It was broadly stated by the Supreme Court that the rights and duties of the United States on commercial paper which it issues are governed by federal rather than local law; that when it disperses its funds or pays its debts it is exercising a constitutional function or power. The Court conceded that the choice of the applicable federal law could involve selection of state law, but added that uncertainty would result if in the issuance of commercial paper on a vast scale it was subject to the "vagaries of the laws of the several states. The desirability of a uniform rule is plain."

To the same effect are United States v. Security Trust & Savings Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950); Director of Revenue, State of Colorado v. United States, 392 F.2d 307

(10th Cir. 1968); United States v. City of Albuquerque, 465 F.2d 776 (10th Cir., August 9, 1972). This court, in Southwest Engine Co. v. United States, 275 F.2d 106, 107 (10th Cir. 1960), in a case involving a conflict between a mechanics' lien and a note given to the Small Business Administration secured by a chattel mortgage, emphasized that federal law prevails where it conflicts with state law and the government is exercising its "constitutional functions."[1] In *Southwest* it was contended that there was implied consent to keep the chattel in repair, whereby the Small Business Administration loan became subordinated to the mechanics' lien which arose from the repair work. This argument was rejected.

■ In 1966 the Congress adopted the Federal Tax Lien Act, 26 U.S.C. § 6323 which subordinated federal tax liens to various other security interests. Appellees argue that this action on the part of Congress evidences a general policy to subordinate all federal liens to other property liens created by state laws. It is true that prior to 1966 both federal tax liens as well as federal mortgage liens took priority over competing liens except those which became choate before the federal lien attached.[2]

1. The opinion states:

First, it is settled that where a divergence of law exists touching contractual rights in which the United States, exercising its constitutional functions, is involved, federal, rather than local, law governs. United States v. Allegheny County, 1944, 322 U.S. 174, 183, 64 S.Ct. 908, 88 L.Ed. 1209. And, the federal decisions uniformly sanction the lien enforcement principle of "first in time, first in right." United States v. City of New Britain, 1954, 347 U.S. 81, 74 S.Ct. 367, 371, 98 L.Ed. 520; United States v. Ringwood Iron Mines, 3 Cir., 251 F.2d 145, certiorari denied 1958, 356 U.S. 974, 78 S.Ct. 1138, 2 L.Ed.2d 1148; United States v. Latrobe Construction, 8 Cir., 246 F.2d 357, certiorari denied 1957, 355 U.S. 890, 78 S.Ct. 262, 2 L. Ed.2d 189.
275 F.2d at 107–108.

Unquestionably, the lien had arisen later in time than had the government mortgage, but the case is authority for the proposition that the federal law does not yield to a special state provision even though it is a mechanics' lien which is competing with the federal lien.
2. See United States v. Oswald & Hess Co., 345 F.2d 886 (3d Cir. 1965); W. T. Jones & Co. v. Foodco Realty, Inc., 318 F.2d 881, 889 n. 19 (4th Cir. 1963); United States v. County of Iowa, 295 F.2d 257 (7th Cir. 1961); Southwest Engine Co. v. United States, 275 F.2d 106 (10th Cir. 1960); United States v. Roessling, 280 F.2d 933, 935–936 (5th Cir. 1960); United States v. Latrobe Constr. Co., 246 F.2d 357, 364–366 (8th Cir. 1957). *See also* United States v. New Britain, 347 U.S. 81, 84, 74 S.Ct. 367, 98 L.Ed. 520 (1954), where the Supreme Court, as noted by Judge Rives in Connecticut Mutual Life Ins. Co. v.

The fact that Congress chose to subordinate tax liens furnishes no evidence that it intended to subordinate all other federal liens to interests created by the laws of the individual states. The 1966 Act applied only to tax debts, and the reports of the House and the Senate speak only of subordinating federal unrecorded tax liens to mechanics' liens.[3] There is not the slightest indication of the intent of Congress to subordinate other claims. In H. B. Agsten & Sons, Inc. v. Huntington Trust & Savings Bank, 388 F.2d 156, 160 (4th Cir. 1967), cert. denied, 390 U.S. 1025, 88 S.Ct. 1413, 20 L.Ed.2d 282 (1968), the court stated that it was not "illogical for Congress to deem it desirable to retain a priority for money it loans, while relinquishing the priority for its tax liens, which represent no financial outlay. Whatever may be the merits of symmetry in these two quite distinct, if cognate, areas the argument seems more properly addressed to Congress than to this court."

■■ We turn now to the question as to what is meant by the federal "first in time, first in right" rule. As previously noted, the non-federal lien must be choate at the crucial time in order to successfully compete with a federal lien.

United States v. New Britain, 347 U.S. 81, 84, 74 S.Ct. 367, 98 L.Ed. 520 (1954). This requirement can be met only if the claim is final; that is, not subject to a judicial contest as to its amount, and also only if it is enforceable by summary proceedings.[4] Thus, a state statutory lien must be specific and perfected on the date that the federal lien was recorded.[5] This determination must be made in accordance with federal law. And so, the state characterization of the lien is not conclusive as against the federal government. United States v. New Britain, *supra*, at 84, 74 S.Ct. 367; United States v. Waddill Holland & Flinn, Inc., 323 U.S. 353, 356–357, 65 S. Ct. 304, 89 L.Ed. 294 (1945).

In our case the materialmen's and mechanics' liens were not recorded until April 1970, whereas the government lien was filed on September 19, 1969. Therefore, the mechanics' liens were not perfected prior to the recording of the federal lien nor, of course, had they become choate. Hence, the only expedient which could be used to give priority to the state lien would be the application of the state law provision that the liens relate back to the date when some preliminary step was taken. It does not make it less a state law application by adopt-

Carter, 446 F.2d 136, 141 n. 3 (5th Cir. 1971) (dissenting opinion), cert. denied, 404 U.S. 857, 92 S.Ct. 104, 30 L.Ed.2d 98 (1971), equated mortgage liens with statutory liens.

The Fifth Circuit expressed the prior rule very clearly in United States v. Roessling, 280 F.2d 933, 935–936 (5th Cir. 1960), when it said:

It is well established that, in the absence of a controlling federal statute, the priority of federally created *tax* liens is determined by the rule that a lien first in time is first in right. United States v. City of New Britain, 1954, 347 U.S. 81, 85, 74 S. Ct. 367, 98 L.Ed. 520; Michigan v. United States, 1943, 317 U.S. 338, 340, 63 S.Ct. 302, 87 L.Ed. 312. That rule governing the priority of federal tax liens has been applied to federal mortgage liens as well. City of New Brunswick v. United States, 1928, 276 U.S. 547, 555, 48 S.Ct. 371, 72 L.Ed.

693; United States v. Latrobe Construction Co., 8 Cir., 1957, 246 F.2d 357, 364; Southwest Engine Co. v. United States, 10th Cir., 1960, 275 F.2d 106, 107.

3. *See* S.Rep.No.1708, 89th Cong., 2d Sess. (1966); H.R.Rep.No.1884, 89th Cong., 2d Sess. (1966); U.S.Code Cong. & Admin.News 3722 (1966).

4. United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264 (1955); United States v. Liverpool & London & Globe Ins. Co., 348 U.S. 215, 75 S.Ct. 247, 99 L.Ed. 268 (1955); United States v. Security Trust & Savings Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950).

5. United States v. Equitable Life Assurance Society of the United States, 384 U.S. 323, 327–328, 86 S.Ct. 1561, 16 L.Ed.2d 593 (1966); United States v. Latrobe Constr. Co., 246 F.2d 357 (8th Cir. 1957).

ing it as federal law. Besides, this would fly in the face of the firmly established "first in time, first in right" concept as well as the requirement that state liens must be choate at the time. In our case, although there were deliveries prior to recording of the federal mortgage, the liens were not even close to being perfected.[6]

We have considered and tested the conclusion here reached in the light of the Supreme Court's decision in the relatively recent case of United Staes v. Yazell, 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed. 2d 404 (1966). This was an action by the United States against a husband and wife in which it sought to collect on a note which evidenced a loan from the Small Business Administration. The Texas law of coverture precluded a married woman from binding separate property unless she had first obtained a decree removing her disability to contract. The Supreme Court held that where she had signed the note without any thought that the defense of coverture would be unavailable, and in view of the fact that the Small Business Administration was represented by lawyers who were well aware of the coverture provision, and since the ruling was found to not interfere with any federal interest, that the government could not recover against her in the face of her defense of lack of capacity. As we view it, this does not provide for any general exception to the doctrine that federal law applies and that the "first in time, first in right"—choateness standard is fully applicable. Indeed, the Court recognized this to be contrary to the general rule, but determined that the exception was an isolated one which could not serve to undermine any federal policy. The length and depth to which the opinion goes to justify the result reached adds weight to our conclusion that such exceptions are not to be readily carved out.

Other exceptional cases cited in the *Yazell* opinion, Fink v. O'Neil, 106 U.S. 272, 1 S.Ct. 325, 27 L.Ed. 196 (1882) and Reconstruction Finance Corp. v. Beaver County, 328 U.S. 204, 66 S.Ct. 992, 90 L.Ed. 1172 (1946), are not germane. In *Fink* it was held that the government was not entitled to levy execution against property which enjoyed a homestead exemption under state law, and in *Reconstruction Finance Corp.* the state classification of property owned by the Reconstruction Finance Corp. as "real property" for tax purposes was recognized for the purpose of determining whether the property was part of the class of property to which Congress had waived the federal exemption from local taxation.[7]

---

6. Compare United States v. White Bear Brewing Co., 350 U.S. 1010, 76 S.Ct. 646, 100 L.Ed. 871 (1956), reversing per curiam the decision of the Seventh Circuit in the same case, 227 F.2d 359 (7th Cir. 1955), wherein foreclosure proceedings had commenced on a mechanics' lien prior to the making of an assessment by the collector of Internal Revenue. The holding was that the mechanics' lien was not choate despite the fact of commencement of the foreclosure proceedings.

7. We have pursued the inquiry further by examining some early decisions which had refused to impose a federal lien with respect to *after-acquired* property under such a clause in the mortgage. See, for example, United States v. New Orleans & Ohio R. Co., 12 Wall. 362, 79 U.S. 362, 20 L.Ed. 434 (1871). See Farmers'

Loan & Trust Co. v. Denver, L. & G. R. Co., 126 F. 46, 49 (C.C.A.Colo.1903), and Bear Lake & River Waterworks & Irrigation Co. v. Garland, 164 U.S. 1, 17 S.Ct. 7, 41 L.Ed. 327 (1896). See also United States v. State of Alabama, 313 U.S. 274, 61 S.Ct. 1011, 85 L.Ed. 1327 (1941). These are distinguishable on their facts, and in addition the asserted lien does not satisfy the choateness test which the federal rule now requires and thus fails to meet a present essential element.

See also Armstrong v. United States, 364 U.S. 40, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960), wherein the United States contracted with a ship builder to construct 11 boats. The builder defaulted and the United States exercised its option to acquire title to the boats. Mechanics' liens were asserted by the materialmen. The Supreme Court over-

■ We conclude that it was error for the trial court to rule so as to subject the United States to a subordinate position pursuant to state law. We hold that the ruling constituted an application of state law and that this condition was not changed by adopting it and denominating it a federal common law doctrine. It is not possible to reconcile the trial court's ruling with the several decisions of this court and with the decisions of the Supreme Court which have clearly enunciated the applicability of federal law and, particularly, the federal requirement of choateness.

Finally, there is an important federal interest in the balance, that of a uniform and consistent rule with respect to the enforceability of federal security instruments.

The judgment is reversed and the cause is remanded for further proceedings with directions to vacate the judgment heretofore entered and to enter judgment for the United States.

ruled the contention of the government that it was entitled to prevail by virtue of having an option to acquire title for boats both completed and uncompleted in the event of default. The lienholders were not allowed to recover because of sovereign immunity of the government, but were allowed to recover on the Fifth Amendment's requirement of just compensation. However, we do not view this case as authority here because the government's lien was at best sketchy and this holding in no way undermines the federal rule of "first in time, first in right."