**UNITED STATES of America,**
**Appellant,**

v.

**GENERAL DOUGLAS MacARTHUR**
**SENIOR VILLAGE, INC., et al.,**
**Appellees.**

**No. 148, Docket 72-1433.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 13, 1972.

Decided Dec. 5, 1972.

John M. Farrell, Jr., Great Neck, N. Y. (Schiffmacher, Rochford & Cullen, Great Neck, N. Y., on the brief), for appellee D. C. R. Holding Corp.

Stanley Beals, Jericho, N. Y., for appellee Sadie Schwartz.

Matthew Feinberg, Hempstead, N. Y. (Saul Horowitz, Corp. Counsel, Hempstead, N. Y., on the brief), for appellee Village of Hempstead.

Louis A. Rossano, Mineola, N. Y. (Joseph Jaspan, County Atty., Mineola, N. Y., on the brief), for appellee County of Nassau.

Before SMITH, KAUFMAN and MULLIGAN, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

The financial needs of local governments allegedly caught in a squeeze between rising costs of vital public services and the diminishing availability of revenues are pressed upon us in this appeal. We are asked to decide whether liens for unpaid real property taxes should be satisfied prior to a mortgage lien held by the Secretary of the Department of Housing and Urban Development, where the mortgage was recorded before assessment of the property taxes. The district court, 337 F.Supp. 955, answered in the affirmative, giving the local governments first priority. Our review of the law, however, compels us to conclude that the United States has a right to priority for its claim. Accordingly, the judgment below is reversed.

I.

In April, 1966, the Department of Housing and Urban Development, acting pursuant to § 202 of the Housing Act of 1959, 12 U.S.C. § 1701q, advanced $1,-774,000 as a loan to General Douglas MacArthur Senior Village, Inc., a private, non-profit corporation organized in New York. The loan was made to facilitate construction of a 144-unit senior citizen apartment structure at 260 Clinton Street, Hempstead, New York. To secure

Morton Hollander, Washington, D. C. (Robert A. Morse, U. S. Atty. for the E. D. N. Y., Harlington Wood, Jr., Asst. Atty. Gen., Walter H. Fleischer, Thomas G. Wilson, Washington, D. C., on the brief), for appellant.

the loan, a note and mortgage were executed by MacArthur on April 28, 1966, and were recorded with the Nassau County clerk on May 9.[1] The mortgage agreement provided that the failure to pay real property taxes was a default entitling HUD, the mortgagee, to declare the entire principal amount immediately due and payable.

Beginning in 1968, MacArthur failed to pay property taxes assessed by the County of Nassau, the Village of Hempstead, and the Town of Hempstead, but HUD did not declare a default at that time. By August, 1971, however, when the property tax arrearage was in excess of $200,000, HUD, now doubtful of MacArthur's ability to operate as a going enterprise, instituted foreclosure proceedings in the district court.[2] The unpaid principal as of June 30, 1971, was $1,717,542.91.

Among those named as defendants, in addition to MacArthur,[3] were the County of Nassau, the Village of Hempstead, the Town of Hempstead, Sadie Schwartz, David Rand,[4] and D.C.R. Holding Corp.[5] The municipal defendants were local governments that had assessed property taxes against MacArthur. Schwartz, Rand and D.C.R. had purchased some of the unpaid liens as investments from the taxing authorities. See Art. XIV, Real Property Tax Law (McKinney's Consol. Laws, c. 50–A). The United States, apparently anticipating that a sale of the property would not produce sufficient funds to satisfy all outstanding liens, asserted that its mortgage lien had priority over all other liens outstanding against the property.

The answers filed by the defendants, while not disputing MacArthur's default, asserted that the property tax liens should have priority over the federal mortgage lien. In addition, Sadie Schwartz and D.C.R. Holding Corp. crossclaimed against the municipal defendants seeking to recover the amounts paid for the property tax liens in the event the lien of the United States was given priority. The United States, thereafter, moved for summary judgment on its claim pursuant to F.R.Civ.P. 56.

Judge Weinstein agreed that there was no genuine dispute as to any material facts, but decided against the government, holding that liens arising from local property taxes are superior to federal mortgage liens and are to be satisfied first from the proceeds of foreclosure sales. Although conceding that if the "first in time is the first in right" principle announced in United States v. New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954), were applicable, the federal lien would have priority, the district judge concluded that Congressional enactment of the Federal Tax Lien Act of 1966, *principally codified at* 26 U.S.C. § 6323, had sufficiently eroded the first in time, first in right principle to obviate the necessity of applying it in this case. This appeal followed.

## II.

The common law rule of lien priority referred to above and characterized by the Supreme Court as "widely accepted and applied, in the absence of legislation to the contrary," United States v. New Britain, 347 U.S. 81, 85, 74 S.Ct.

1. The mortgage term was 50 years at an interest rate of 3% per year.

2. Jurisdiction was based on 28 U.S.C. § 1345.

3. MacArthur's answer to the complaint admitted the default and summary judgment against MacArthur was granted on October 15, 1971. MacArthur is no longer involved in these proceedings.

4. Subsequent to the filing of the complaint, David Rand died. The executors

of his estate were substituted as parties on October 22, 1971.

5. Other defendants named in the complaint were the State of New York, School District #1, Disabled American Veterans Department of New York, and Omni Investing Corp. None of these defendants have filed an answer to the complaint and the district court noted their default in the action.

at 370 (1954), has roots in Rankin v. Scott, 25 U.S. (12 Wheat.) 177, 6 L.Ed. 592 (1827), and has been applied uniformly in more recent decisions. *See, e. g.,* United States v. Equitable Life Assurance Society of United States, 384 U.S. 323, 86 S.Ct. 1561, 16 L.Ed.2d 593 (1966). Under this principle, the federal mortgage lien, having been recorded in 1966, would be superior to property tax liens arising in 1968 and succeeding years. *See* United States v. Roessling, 280 F.2d 933 (5th Cir. 1960); United States v. Ringwood Iron Mines, Inc., 251 F.2d 145 (3d Cir.), cert. denied, 356 U.S. 974, 78 S.Ct. 1138, 2 L.Ed.2d 1148 (1958), (mortgage liens held by federal agencies superior to liens for local property taxes assessed after recording date).

But, it is interesting to note that even prior to the *New Britain* decision, federal application of the first in time, first in right rule had been criticized. *See* Kennedy, The Relative Priority of the Federal Government: The Pernicious Career of the Inchoate and General Lien, 63 Yale L.J. 905 (1954). The attack focused mainly upon what is known as the "choateness" requirement, which is a part of the first-in-time axiom. A nonfederal lien does not become choate until "the identity of the lienor, the property subject to the lien, and the amount of the lien are established." United States v. Pioneer American Insurance Co., 374 U.S. 84, 89, 83 S.Ct. 1651, 1655, 10 L.Ed. 2d 770 (1963), quoting United States v. New Britain, 347 U.S. 81, 84, 74 S.Ct. 367 (1954). With few exceptions, "no common law, equitable or statutory lien could meet that judicial standard of 'choateness' unless the lienor's claim had been reduced to judgment." Plumb, Federal Liens and Priorities—Agenda for the Next Decade, 77 Yale L.J. 228, 230 (1967). Consequently, federal liens took priority over state liens in almost every instance. See, e. g., United States v. White Bear Brewing Co., 350 U.S. 1010, 76 S.Ct. 646, 100 L.Ed. 871 (1956), rev'g

mem. 227 F.2d 359 (7th Cir. 1955). In 1958 the Report of the American Bar Association's Special Committee on Federal Liens, 84 A.B.A.Rep. 645 (1959), stated that "This extension of the scope of the federal tax lien and the uncertainties the decisions have created have had a severe impact on innumerable business and commercial transactions and have caused increasing concern on the part of many lawyers throughout the country."

In an attempt to initiate remedial change, the ABA charged the Special Committee "with the responsibility of making a comprehensive report . . . regarding the present status of federal liens, and of submitting proposed draft amendments to the lien statutes 'and such other related statutes as appear desirable in order to provide greater equity as between federal tax liens and other lienors and claimants, and to clarify the entire matter.'" 84 A.B.A.Rep. 645 (1959). In response to this mandate, the Special Committee drafted legislation designed to make substantial revisions in the enforcement of federal tax liens.

Although initial reaction was not enthusiastic, Congress, in 1966, enacted legislation which put into effect the Special Committee's proposals. 26 U.S.C. § 6323(b)(6)(A) subordinates a federal *tax* lien to the local lien, even where the federal lien arose first, wherever state law would grant the local property tax lien a priority over a prior competing interest held by any other person.[6] Accordingly, if the lien asserted by the United States in this case arose from an income tax assessment rather than a mortgage, the local property tax liens would have priority.

▮ We are unable to conclude, however, that a Congressional enactment, carefully drawn, which affects the priority of federal *tax* liens leaves the courts free to disregard prior precedents and thus to broadly extend the scope of the statute's principle to other unspeci-

---

6. The same priority is given to liens for special assessments for public improvements, 26 U.S.C. § 6323(b)(6)(B), and liens for utilities charges by a government or its instrumentality. *Id.* § 6323 (b)(6)(C).

fied areas which, though somewhat analogous, were simply not addressed by the Congress. Although Judge Weinstein's carefully considered opinion forcefully argues that such an extension represents the best balancing of competing interests, his discussion would more appropriately be addressed to Congress. But where Congress has considered proposals of a highly qualified committee and has enacted specific, carefully-tailored legislation,[7] it would be inappropriate for a court to undertake piecemeal extensions of the principles reflected in this legislation merely because it is desirable, especially in view of the fact that Congress saw fit not to provide for these extensions.[8] Several cases have made this clear. *See* T. H. Rogers Lumber Co. v. Apel, 468 F.2d 14, (10th Cir. 1972) (federal mortgage lien given priority over mechanics lien); Aetna Insurance Co. v. United States, 456 F.2d 773 (Ct. Cl.1972) (right of United States to offset unpaid taxes against unpaid contract balance superior to a surety bondsman's claim to the retainage) H. B. Agsten & Sons, Inc. v. Huntington Trust & Savings Bank, 388 F.2d 156 (4th Cir. 1967) (Small Business Administration lien superior to mechanics lien). *But compare* Connecticut Mutual Life Insurance Co. v. Carter, 446 F.2d 136 (5th Cir.), cert. denied, 404 U.S. 1000, 92 S.Ct. 563, 30 L. Ed.2d 553 (1971) (lien for attorney's fees given priority over FHA mortgage lien); Ault v. Harris, 317 F.Supp. 373 (D.Alas. 1968), aff'd, 432 F.2d 441 (9th Cir. 1970) (per curiam) (mechanics lien given priority over Small Business Administration lien).

We believe that in an area calling for national policy decisions concerning diminution of the tax base of local governments, the soundest approach would be to look to Congress for resolution rather than to the judiciary. Congress has the fact gathering facilities so necessary for an appropriate gauging of the impact of a decision to waive the federal priority for mortgage liens, and Congress is best-suited to make the necessary judgment whether to return a portion of federal revenues to local governments. In view of the national scope of the problem and the absence of legislation extending the priority of property tax liens beyond the confines of the federal tax lien, the rule of first in time, first in right, followed by the Supreme Court, must apply.

### III.

The absence of any Congressional intent to subordinate the lien interest of the United States in the circumstances presented to us indicates still another bar to granting a priority to the local property tax liens. At least since McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819), property of the United States has been immune from taxation by the states or their subdivisions, in the absence of Congressional consent. Of course, in the case at hand, the United States does not own the property, but has only a mortgage interest. Although in such a case local governments may assess taxes based on the full value of the property, *see* S. R. A., Inc. v. Minnesota, 327 U.S. 558, 66 S.Ct. 749, 90 L.Ed. 851 (1946), New Brunswick v.

---

7. *See*, e. g., 26 U.S.C. § 6323(b)(7), which subordinates federal tax liens to mechanics liens for the "repair or improvement of a personal residence (containing not more than four dwelling units) occupied by the owner of such residence . . . but only if the contract price on the contract with the owner is not more than $1,000."

8. Although the Special Committee's study mandate encompassed all federal liens, "because of limitations of time and personnel, and the practical desirability of fo-

cusing its negotiations on one government department and one committee in each branch of Congress, the Special Committee's final proposals, and to a greater extent the legislation which evolved, dealt primarily with the tax situation, leaving to another day the extension of the reforms to other areas." Plumb, Federal Liens and Priorities—Agenda for the Next Decade, 77 Yale L.J. 228, 285 (1967). *See* 84 A.B.A.Rep. 645, 671–72 (1959). Mr. Plumb was a member of the Special Committee.

United States, 276 U.S. 547, 48 S.Ct. 371, 72 L.Ed. 693 (1928), taught that local governments cannot take any action to collect unpaid taxes assessed against property which would have the effect of reducing or destroying the value of a federally held purchase-money mortgage lien. *Accord, S. R. A., Inc. v. Minnesota, supra;* United States v. Roessling, 280 F.2d 933 (5th Cir. 1960). In short, the land is not immune from local taxation, but the federal interest is, and the local governments cannot enforce their liens until the federal debt is satisfied.

■ The court below discussed in detail various statutory provisions pursuant to which HUD operates in the housing field, reading these statutes as waiving the paramount federal interest of a mortgage held by HUD pursuant to 12 U.S.C. § 1701q. We are unable to agree, however, that the statutory scheme waives the immunity established by *New Brunswick, supra,* and places the United States on a par with a private mortgagee.[9]

Section 1701q, pursuant to which HUD extended the loan to MacArthur, does not provide that any property acquired by HUD may be subjected to property taxes by state and local government. But other subchapters in chapter 13 of Title 12, which authorize other HUD financing programs, state that "nothing in this subchapter shall be construed to exempt any real property acquired and held by the Secretary under this subchapter from taxation by any State or political subdivision thereof . . . ." 12 U.S.C. §§ 1714, 1741, 1747j, 1750e. Judge Weinstein concluded that 12 U.S.C. § 1733, which provides that "all . . provisions of law establishing rights under mortgages insured in accordance with the provisions of this chapter, shall be held to apply to such chapter, as amended," mandated uniform waiver of immunity from taxation of all mortgages held under chapter 13.

Several considerations, however, strongly reject this interpretation of § 1733. Initially, it is difficult to read "rights under mortgages" to encompass consent to local property taxation. The connotation "under" implies rights enuring to either of the parties to the mortgage. Second, § 1714, granting consent to taxation of property acquired and held under subchapter II, was enacted in 1934 but § 1733 was enacted in 1938. If § 1733 was intended to apply a waiver of immunity clause throughout chapter 13, inclusion of §§ 1741, 1747j, and 1750e in subsequently enacted subchapters was unnecessary. Finally, § 1748h–3 specifically states that property held pursuant to subchapter VIII is not taxable by state or local governments, although HUD is permitted to make payments in lieu of taxes. In light of the substantial doubt as to the applicability of § 1733, we do not believe that the statutory scheme evidences any Congressional intent to waive federal immunity from state taxation for property acquired by the United States under § 1701q. Accordingly, *New Brunswick* mandates that the lien of the United States be afforded priority.

## IV.

In sum, we conclude that neither the Federal Tax Lien Act of 1966 nor the various provisions in chapter 13 of Title 12 authorize a priority for the local property tax liens held by the appellees. We are, of course, aware of the compelling need that municipal governments have for tax dollars. But, we also are mindful of Learned Hand's advice that a court should be reluctant "to embrace the exhilarating opportunity of anticipating a doctrine which may be in the womb of time, but whose birth is distant." Spector Motor Service v. Walsh, 139 F.2d 809, 823 (2d Cir. 1943) (dissenting), vacated 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101 (1944). We ought to pay particular attention to these wise

---

9. A non-federally held mortgage would be subordinated to local tax liens without regard to the "first in time, first in right"

rule. New York Real Property Actions and Proceedings Law § 1354 (McKinney's Consol.Laws, c. 81, 1963).

words where, as here, the appropriate midwife is Congress.

Accordingly, the judgment of the district court is reversed. Since we conclude that the lien of the United States has priority, the case is remanded for consideration of the cross-claims of Sadie Schwartz and D.C.R. Holding Corp.