**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**CALIFORNIA–OREGON PLYWOOD,**
**INC., a corporation, et al.,**
**Defendants-Appellees.**

No. 74-2458. .

United States Court of Appeals,
Ninth Circuit.

Dec. 15, 1975.

Thomas G. Wilson, Atty. (argued), Dept. of Justice, Washington, D. C., for plaintiff-appellant.

Edward P. Hollingshead, Deputy Atty. Gen. of Cal. (argued), Sacramento, Cal., for defendants-appellees.

## OPINION

Before ELY and WRIGHT, Circuit Judges, and LUCAS,* District Judge.

EUGENE. A. WRIGHT, Circuit Judge:

Today we are asked to decide whether the principle of "first in time, first in right" gives priority to the United States' deeds of trust on real property over subsequently accruing local property taxes. We hold, in this action by the government to foreclose SBA liens, that the principle does not apply and that state and county tax liens are entitled to priority. We affirm the judgment of the district court which relied upon *Ault v. Harris*, 317 F.Supp. 373 (D.Alaska 1968), as affirmed in *Ault v. United States*, 432 F.2d 441 (9th Cir. 1970).

The Area Redevelopment Administration (ARA), predecessor to the Economic Development Administration (EDA),[1] loaned in excess of $1,000,000 to the Joseph Plywood Corporation in 1962. The Small Business Administration (SBA) acted as the servicing agent and its name alone appeared on the deed of trust of land in Siskiyou County, California, given as security for the loan. California-Oregon Plywood, Inc. later assumed the indebtedness.[2]

A second loan was made directly to the successor corporation in 1965 by the U. S. National Bank of Portland in the amount of $200,000 and was secured by a second deed of trust on the same property. This instrument was assigned to the SBA, acting again for its undisclosed principal, the ARA.

When accrued real estate taxes were not paid beginning in 1966–67, the property was tax deeded to the state [Cal. Rev. & Tax.Code, § 3436] and, upon foreclosure, the sum of $30,000 was realized and placed in the registry of the district court pending the resolution of the priority dispute.[3]

Applicable state law provides that the state tax lien takes priority over the SBA deed of trust [Cal.Rev. & Tax.Code § 2192.1]. The government argues that federal, not state, law is applicable and that the principle "first in time, first in right," controls. Since the SBA lien attached prior to the assessment of taxes, the SBA should prevail, says the appellant.

"We start with the basic proposition that federal law determines the relative priority of conflicting claims where a federal agency is involved. *United States v. Clover Spinning Mills Co.*, 373 F.2d 274, 276 (4th Cir. 1966)." *H. B. Agsten & Sons, Inc. v. Huntington Trust & Savings Bank*, 388 F.2d 156, 158 (4th Cir. 1967). So we ask, what is the applicable federal law?

The application of "first in time, first in right" to priority disputes emanated from three Supreme Court cases: *United States v. Equitable Life Assurance Society of United States*, 384 U.S. 323, 86 S.Ct. 1561, 16 L.Ed.2d 593 (1966); *United States v. Pioneer American Insurance Co.*, 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963); and *United States v. New Britain*, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954). They hold that a federal tax lien is superior to all other liens not choate at the time the federal tax lien is filed. Although this doctrine originally arose in the tax lien field, it has been extended to other non-tax lien

---

* Honorable Malcolm M. Lucas, United States District Judge for the Central District of California, sitting by designation.

1. 42 U.S.C. § 3214.

2. Another loan was also made at this time. Originally it constituted the first cause of action in this complaint but it has since been satisfied by proceeds from additional security upon which the U.S. foreclosed in a suit in

Oregon, and it is no longer involved in this appeal.

3. Although the total amount of taxes, penalties, and costs exceed $37,000, neither the state nor county made any claim to any of the personal property which was foreclosed. Their recovery was therefore limited to $30,-000, the proceeds from the foreclosure sale.

areas. *See Connecticut-Mutual Life Insurance Co. v. Carter,* 446 F.2d 136, 138–39 (5th Cir. 1971), and cases cited therein. The court below recognized that if the "first in time, first in right" principle was applied to this dispute, the SBA security interest would prevail.

The court below refused to apply the principle, however, citing *Ault, supra.* This court adopted the opinion of the *Ault* district court which gave a mechanic's lien priority over an SBA deed of trust despite the fact that the federal lien arose before the state lien. The opinion relied heavily upon the passage of the Federal Tax Lien Act of 1966 [26 U.S.C. § 6323], which occurred after the Supreme Court cases enunciating the principle of "first in time, first in right."

The Tax Lien Act, which reversed the priority of federal tax liens relative to specified state created liens by adopting state law, indicated to the *Ault* district court a congressional intent to abolish the principle of "first in time, first in right" in federal non-tax lien situations as well. Referring to the Tax Lien Act, the court said:

> Congress in the field of Federal tax liens has clearly expressed its intention that the priority between Federal tax liens and mechanic liens be determined by local law. The collection of taxes is basic to the operation and the very existence of the Federal government. No good reason has been advanced by the United States which would justify this Court in adopting in the present situation, where the SBA was operating as a mere money-lending agency, a rule more stringent than that deemed necessary by Congress in the more important field of taxation.

317 F.Supp. at 375. *See also Connecticut Mutual Life Insurance Co. v. Carter, supra* at 139.

In addition to this recent indication of congressional intent, the district court in *Ault* noted that the SBA had availed itself of state forms and procedures in acquiring its security interest and was therefore aware of the state law on the priority question. Finally, the court noted that the SBA could have protected its interest by withholding sufficient funds to pay the lien if established. 317 F.Supp. at 375–6.

The government noted in its brief and at oral argument that if this court were to reverse the decision below it would by necessity have to overrule *Ault, supra.* In support of its contention that *Ault* should be overruled, it cited several cases which rejected the *Ault* court's reliance on the Tax Lien Act as an indicator of congressional intent to abolish the "first in time, first in right" rule in federal non-tax lien cases. *United States v. General Douglas MacArthur Senior Village, Inc.,* 470 F.2d 675 (2d Cir. 1972); *T. H. Rogers Lumber Co. v. Apel,* 468 F.2d 14, 18 (10th Cir. 1972); *H. B. Agsten & Sons, Inc. v. Huntington Trust & Savings Bank, supra; Aetna Insurance Co. v. United States,* 456 F.2d 773, 197 Ct.Cl. 713 (1972).

The reasoning of these decisions is illustrated by the Second Circuit when, in referring to the Federal Tax Lien Act, it stated that it was unable to conclude:

> that a Congressional enactment, carefully drawn, which affects the priority of federal *tax* liens leaves the courts free to disregard prior precedents and thus to broadly extend the scope of the statute's principles to other unspecified areas which, though somewhat analogous, were simply not addressed by the Congress.

470 F.2d at 678–9. (Emphasis in original.)

While we see merit in this argument, we remain convinced of the correctness of our decision in *Ault.* Moreover, in this appeal we are presented with additional evidence of congressional intent to subordinate the federal lien to the state tax lien.

Congress has expressly made SBA liens subordinate to certain state created property tax liens. 15 U.S.C. § 646 provides:

> Any interest held by the Administration [SBA] in property, as security for a loan, shall be subordinate to any lien

on such property for taxes due on the property to a State, or political subdivision thereof, in any case where such lien would, under applicable State law, be superior to such interest if such interest were held by any party other than the United States.

On its face, the language of the statute appears squarely on point in this case. We have a lien on property held by the SBA as security for a loan in conflict with a lien for taxes held by a state. Despite the seeming applicability of the statute to the facts of this case, the government contends that § 646 is inapplicable. Although only the SBA label appeared on the relevant documents, the funds actually came from the ABA/EDA. Since the SBA was merely acting as the servicing agent, the government argues that the lien was not that of the SBA.

In support of that argument the government cites two cases which considered § 646 in light of facts similar to those in this appeal and rejected it as inapplicable: *United States v. Maes*, 316 F.Supp. 1267 (D.Colo.1969); *United States v. Dyna-Tex., Inc.*, 372 F.Supp. 278 (D.Tenn.1972). Both courts concluded that since the source of the funds was not the SBA, the interests created were not those of the SBA, making § 646 inapplicable.

The government with commendable candor, cites us to another decision which on similar facts reached the opposite conclusion on the applicability of § 646. *Edmondson v. Chesapeake Clamchip Corp.*, 350 F.Supp. 1236 (D.Md.1972). Although the funds for the loan in this case also came from the ARA/EDA, the court focused on the legal effect of the recorded documents which showed the SBA as the only secured party. The *Edmondson* court specifically rejected the rationale of *Maes* both because it as-

sumed that in *Maes* the recorded documents showed that the ARA was the source of the funds and because the applicable state law required that the court view the SBA as the principal since its name alone appeared on the relevant documents.

Neither line of cases is persuasive. The *Maes* court did not consider the apparent application of § 646 under its plain language. Nor did *Edmondson* confront this question. It relied instead on state law governing recording of security interest in holding that § 646 was applicable. We see no reason to disregard the statutory language. Given the lack of convincing authority to the contrary, we hold that the plain language of § 646 applies to the present case. To say otherwise is to create an ambiguity where none existed. An SBA interest for the purpose of § 646 includes interests held in the name of the SBA alone although the funds which the loan secures are provided by the ARA/EDA.

If the SBA prefers not to be subject to § 646 it possesses the means to avoid this result. Any future deeds of trust procured by the SBA as servicing agent for the EDA can so note, thus removing them from the plain language of § 646.[4] The SBA can also withhold sufficient funds to cover potential liens, as noted in *Ault, supra* at 376, to prevent the establishment of superior state or county tax liens.

The interrelationship of the SBA/EDA further supports due application of § 646 to the instant case. This relationship is indicated not only by the servicing arrangement employed in this case,[5] but also by the similar purposes of the two agencies. Both seek to increase economic development on the local level. As a by-product, both attempt to aid local tax revenues.[6] We cannot accept the unsup-

---

4. Although the SBA might in this manner avoid the direct effect of § 646, congressional intent as indicated by the Federal Tax Lien Act suggests that the ultimate result in this case would be the same. Moreover, the congressional intent indicated by § 646 in regard to

SBA loans must carry over into the similar field of ARA/EDA loans. *See* discussion *infra*.

5. 26 Fed.Reg. 7975.

6. *Compare* legislative history of the ARA, 1961 U.S.Code Cong. and Admin.News, pp. 1567–

ported proposition that Congress intended to give state and local tax liens superiority to federal liens in one but not the other of these two similar programs. Finally, we note that the enactment of the ARA contained an amendment to the Small Business Investment Act, a part of the SBA.[7] This further indicates the interrelationship of the statutes and justifies the application of § 646 to liens held by the SBA but based on loans of ARA/EDA funds in at least those cases where the source of the funds is not clearly indicated on the relevant, recorded documents.

Since we hold that the Federal Tax Lien Act of 1966 and 15 U.S.C. § 646 indicate congressional intent to subordinate the federal lien to the state tax lien, we need not reach the contention urged upon us by the government for the first time on appeal that absent such intent the federal interest would be constitutionally immune from taxation.

Affirmed.

87, with legislative history of SBA, 1958 U.S. Code Cong. and Admin.News, pp. 3071–84. With the creation of the ARA, Congress contemplated an increase in local tax base. 1961 U.S.Code Cong. and Admin.News, p. 1575. The *inclusion of* § 646 in the Small Business Act obviously indicates congressional concern for the protection of local revenues.

7. *The Area Redevelopment Act of 1961,* Pub.L. 87–27 (May 1, 1961), 75 Stat. 47 (formerly 42 U.S.C. §§ 2501–25), amended the Small Business Investment Act of 1958, Pub.L. 85–699 (August 21, 1958), 72 Stat. 689, 15 U.S.C. §§ 661–696.