**McCOLLOUGH CONSTRUCTION COMPANY, INC., an Indiana Corporation, Plaintiff,**

v.

**AGRICULTURAL PRODUCTS CORPORATION and Small Business Administration, an Agency of the United States of America, Defendants.**

Civ. No. 73 S 158.

United States District Court,
N. D. Indiana,
South Bend Division.

Aug. 24, 1977.

John D. Ulmer, Yoder, Ainlay, Ulmer & Buckingham, Goshen, Ind., for plaintiff.

John S. Leonardo, Asst. U. S. Atty., South Bend, Ind., for defendants.

MEMORANDUM

GRANT, District Judge.

This case deals with a priority conflict between a mechanic's lien and a federal mortgage lien. In February and March of 1971, an architectural draftsman, employed by the plaintiff, visited the site in question for a proposed building. He checked the grade and examined the foundation which remained from a prior structure. He then prepared final drawings for the project. (Affidavit in support of motion for summary judgment, filed 3 May 1974.) On 28 April 1971, Agricultural Products Corporation [Owner] executed two promissory notes, totaling $100,000.00, and a mortgage to the Valley Bank and Trust Company of Mishawaka. (Attached to SBA's cross-complaint, filed 3 October 1973.) The two notes refer to the mortgage and are typed on forms supplied by the SBA, but the named promisee is the Valley Bank and Trust Company. That mortgage was recorded on 3 May 1971. On 10 May 1971, a written contract for construction was executed between the plaintiff and the Owner. (Attached to plaintiff's motion for summary judgment, filed 3 May 1974.) Apparently, prior to this time there had been an oral

agreement for construction, as evidenced by the fact that plaintiff received a letter on 5 February 1971 from the Owner indicating an intent to purchase a building from the plaintiff. Furthermore, on 12 April 1971, plaintiff received a letter from the SBA which indicated that Owner had informed the SBA that plaintiff had contracted to construct a facility for Owner. (Both letters are attached to plaintiff's additional affidavit, filed 17 July 1974.) Some time after 10 May 1971, the plaintiff started actual construction which was completed by 30 August 1972. On 21 September 1972, the plaintiff filed a notice of intent to hold a mechanic's lien pursuant to I.C. 32–8–3–1. (Attached to plaintiff's motion for summary judgment, filed 3 May 1971.) On 24 November 1972, the Valley Bank and Trust Company assigned its mortgage and promissory notes to the SBA pursuant to a "Guaranty Agreement" dated 15 June 1970. (Assignment attached to SBA's cross-complaint, filed 3 October 1973; the "Guaranty Agreement" has not been made a part of the record.)

On 9 July 1973, plaintiff filed in the Superior Court of St. Joseph County its complaint to foreclose its mechanic's lien, in which it alleged that there was due and owing $3,177.66 on the contract. On 7 August 1973, the United States petitioned for removal of this cause to this federal court. On 3 October 1973, the SBA filed its cross-complaint, alleging default on the two notes and asking: (1) for judgment against Owner for $93,547.51, plus interest and costs of this action; (2) that the SBA be declared the holder of a first lien on the real estate; (3) that the real estate be sold by the U. S. Marshal to satisfy the judgment; and (4) that the SBA be allowed to bid at the sale. Plaintiff and defendant-SBA have filed motions for summary judgment, but defendant-Owner has totally failed to respond.

■ There is no question that federal law, not state law, controls the case at bar. The mortgage lien held by the federal government agency, the SBA, is as much a federal lien as a federal tax lien. There is a general rule that federal law determines the relative priority of conflicting claims where a federal agency is involved. *United States v. Clover Spinning Mills Co.*, 373 F.2d 274, 276 (4th Cir. 1966). In *United States v. County of Iowa*, 295 F.2d 257 (7th Cir. 1961), the court held that a Wisconsin state tax lien did not take precedence over a federal mortgage lien which arose earlier than the tax lien. In *County of Iowa*, the court stated:

■ The holding of the Fifth Circuit in *United States v. Roessling*, 1960, 280 F.2d 933, 935–936, is applicable to the case at bar, wherein they say:

"It is well established that, in the absence of a controlling federal statute, the priority of federally created *tax* liens is determined by the rule that a lien first in time is first in right. *United States v. City of New Britain*, 1954, 347 U.S. 81, 85 [74 S.Ct. 367, 98 L.Ed. 520] . . .; *Michigan v. United States*, 1943, 317 U.S. 338, 340 [63 S.Ct. 302, 87 L.Ed. 312] . . . That rule governing the priority of federal tax liens has been applied to federal mortgage liens as well. *City of New Brunswick v. United States*, 1928, 276 U.S. 547, 555 [48 S.Ct. 371, 72 L.Ed. 693] . . .; *United States v. Latrobe Construction Co.*, 8 Cir., 1957, 246 F.2d 357, 364; *Southwest Engine Co. v. United States*, 10 Cir., 1960, 275 F.2d 106, 107."

We agree that the rule laid down in *United States v. City of New Britain*, 1954, 347 U.S. 81, 85, 74 S.Ct. 367, 370, 98 L.Ed. 520 that in tax liens "the first in time is the first in right" is equally applicable to federal mortgage liens under the circumstances of the case under review. 295 F.2d 257, 258. This rule of "first in time, first in right" is federal common law which ignores the relation-back aspect of perfection under state mechanic's liens statutes.

In *Kimbell Foods, Inc. v. Republic Nat. Bank of Dallas*, 401 F.Supp. 316 (N.D.Tex. 1975), the court was faced with a situation similar to the case at bar. In *Kimbell*, the SBA did not actually loan any money to the

defaulting party. A private bank loaned its own funds in exchange for a note and a security interest in the debtor's personal property. The SBA's role was to originally guarantee 90% of the loan so that, after the default, it then paid the bank 90% of the outstanding indebtedness in exchange for assignment of the security interest and note. In giving the federal mortgage lien priority, the court in *Kimbell* held:

> The participation of the SBA in the Republic Bank loan was evident from the face of the note; therefore their lien would be perfected as of the time of the . . . filing [by the private bank]. The SBA's claim to priority would be unaffected by the fact that formal assignment by the bank did not occur until approximately a year later.

401 F.Supp. 316, 323.

The *Kimbell* court went on to discuss the issue of whether a mechanic's lien, in competition with a federal mortgage lien, becomes "choate" at the time of perfection under the applicable state law, or whether it remains "inchoate" until it is reduced to judgment:

> The continued validity of the federal choate lien test was questioned by two decisions which construed the effect of the Federal Tax Lien Act of 1966 (P.L. 89–719, 80 Stat. 1125), on federal tax and mortgage liens. See *Ault v. Harris*, 317 F.Supp. 373 (D.Alaska 1968), aff'd per curiam (by adoption) 432 F.2d 441 (9th Cir. 1970); *Connecticut Mutual Life Insurance Company v. Carter*, 446 F.2d 136 (5th Cir. 1971). In *Connecticut Mutual* an inchoate lien for attorney's fees contained in a first mortgage was entitled to priority over a FHA mortgage lien where the FHA expressly took their second mortgage subject to first mortgage. Over a strong dissent by Judge Rives, the Court held that:
>
> > ". . . . the statute [Federal Tax Lien Act of 1966] diminishes the validity of the choate lien test in the important field of taxation where the doctrine originated. It would indeed be anomalous and contrary to our view

of congressional intent to allow the FHA operating as a money-lending agency to prevail in a situation where the government as holder of a tax lien would have an inferior security interest." 446 F.2d at 139.

The rationale of the *Ault* and *Connecticut Mutual* cases seems to be that since Congress chose to subordinate federal tax liens in certain specified instances that they intended to subordinate all other federal liens. However, at the same time these courts recognized that Congress had spoken only to tax liens, and other federal liens were not specifically covered by the statute.

This rationale has been questioned by two later decisions of the Second and the Tenth Circuit Courts of Appeal. In *T. H. Rogers Lumber Company v. Apel* [468 F.2d 14], supra, the Court in construing the priorities between a FHA mortgage lien and mechanics' and materialman's liens stated:

> "The fact that Congress chose to subordinate tax liens furnishes no evidence that it intended to subordinate all other federal liens to interests created by the laws of the individual states. The 1966 Act applied only to tax debts, and the reports of the House and the Senate speak only of subordinating federal unrecorded tax liens to mechanics' liens. There is not the slightest indication of the intent of Congress to subordinate other claims." 468 F.2d at 18.

The Second Circuit in *United States v. General Douglas MacArthur Sr. Vil., Inc.* [470 F.2d 675], supra, also concurred with the view of the Tenth Circuit:

> "We are unable to conclude, however, that a Congressional enactment, carefully drawn, which affects the priority of federal *tax* liens leaves the courts free to disregard prior precedents and thus to broadly extend the scope of the statute's principle to other unspecified areas which, though somewhat analogous, were simply not addressed by the Congress. Although Judge Weinstein's carefully considered opinion forcefully argues that such an

extension represents the best balancing of competing interests, his discussion would more appropriately be addressed to Congress. But where Congress has considered proposals of a highly qualified committee and has enacted specific, carefully-tailored legislation, it would be inappropriate for a court to undertake piecemeal extensions of the principles reflected in this legislation merely because it is desirable, especially in view of the fact that Congress saw fit not to provide for these extensions. . . . In view of the national scope of the problem and the absence of legislation extending the priority of property tax liens beyond the confines of the federal tax lien, the rule of first in time, first in right, followed by the Supreme Court, must apply." 470 F.2d at 678–679.

Additionally, the Fifth Circuit has now dispelled any thought that the federal choate lien test was abolished by the *Connecticut Mutual* case. In *Texas Oil & Gas Corporation v. United States* [466 F.2d 1040], supra, the Court stated that:

"... It does not appear to this court that the 1966 amendments to the tax lien statutes did away with the choateness doctrine of *United States v. Security Trust* [*& Savings Bank*, 1950, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53] *supra*. The Supreme Court expressly rejected that inference after earlier amendments to the tax lien statutes. *See United States v. Pioneer American* [*Insurance Co.*, 1963, 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770], *supra*." 466 F.2d at 1053.

Therefore, this Court concludes that the federal choate lien test is still applicable to the claims of the parties herein and the *Connecticut Mutual* case is limited to the particular set of circumstances with which that Court was faced.

401 F.Supp. 316, 323.

The weight of authority is in favor of the conclusion that a mechanic's lien in competition with a federal mortgage lien, remains inchoate until reduced to judgment. Although this rule may at times be inequitable and disruptive of the local commercial scheme, this court now follows the weight of authority and declares that McCollough's mechanic's lien was inchoate and therefore subordinate to the federal mortgage lien.